**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

HARRY HAWKINS, JR., )
Petitioner, )
v. ) Case No. CIV-06-704-M
)
UNITED STATES PAROLE COMMISSION )
and JOE KEFFER, WARDEN, )
)
Respondents. )

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner appearing *pro se*, filed this action seeking habeas relief [Doc. #9].[1] Respondents have filed a Response to the Petition [Doc. #21]. Although Petitioner was given the opportunity to reply, he has not done so.[2] This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C) . For the reasons set forth below, it is recommended that the Petition be denied.

## I. Background

On June 30, 1986, the United States District Court for the Western District of Missouri found Petitioner guilty of conspiracy to distribute cocaine and distribution of

---

[1]The original Petition [Doc. #1] is styled as a motion. Petitioner states that the action is brought pursuant to the "All Writs Act." Petition at 2. In his Amended Petition [Doc. #9], Petitioner states that jurisdiction is based on "Violation of a Protected Liberty Interest that Presents Constitutional Questions." Amended Petition at 1. It is clear, however, that Petitioner is challenging the execution of his sentence. Therefore, the jurisdictional basis for this action is 28 U.S.C. § 2241. *See McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) ("Petitions under § 2241 are used to attack the execution of a sentence[.]" (citations omitted)).

[2]Respondents state that Petitioner was scheduled to be released to start his three-year term of supervised release on November 27, 2006. There is nothing in the record to show whether Petitioner was actually released on that date.

cocaine and sentenced him to fifteen years imprisonment to be followed by a three-year supervised special parole term. *See* Response Exhibit 1 at 18. Petitioner's sentence was originally calculated to expire in April 2001. *Id.* at 19. Between the date of his conviction and October 28, 2003, Respondent United States Parole Commission (Commission) granted Petitioner parole five times. Each time, Petitioner violated the conditions of his parole. After each violation, the Commission ultimately revoked Petitioner's parole and he was returned to custody. The nature of the parole violation determined whether Petitioner was given credit toward his sentence for "street time," the time he had spent on parole. When Petitioner's parole was revoked because he had been convicted of a crime punishable by imprisonment, the Commission did not give Petitioner credit for his street time.[3] After each revocation, the Bureau of Prisons (BOP) recalculated Petitioner's full term expiration date and other relevant dates.

The Commission determined that Petitioner was again eligible for parole on October 28, 2003. On November 12, 2003, however, the Commission informed Petitioner that his parole date was delayed for 45 days, until December 12, 2003, because Petitioner had violated an institutional rule. Response Exhibit 11. Petitioner disagreed with the calculation of his full term expiration date, however, and refused to sign parole documents. His refusal

[3]Petitioner has previously challenged the Commission's 1995 and 1999 decisions both of which resulted in forfeiture of street time. The validity of these revocation decisions are not before this Court. The Proposed Findings and Recommended Disposition of Magistrate Judge J. Thomas Ray, United States District Court for the Eastern District of Arkansas, thoroughly outlines the succession of Petitioner's periods of parole and his parole violations. *See* Response Attachment 2. *See also* Response at 1-7.

to sign the documents was deemed a waiver of parole, and he remained in prison. Response Exhibit 12.

On July 7, 2005, Petitioner was eligible for mandatory release.[4] He had served all but 644 days of his sentence, according to the calculation of the BOP, and he had accrued 514 good time credits and 130 extra credits. *See* Response Exhibit 13. As a condition of his mandatory release, Petitioner was to remain under the jurisdiction and supervision of the Commission "as if on parole," for the remainder of his sentence (644 days), less 180 days, as required by statute.[5] The BOP had calculated the full term expiration date of Petitioner's sentence to be October 14, 2006, at which time he was scheduled to begin his three-year special parole. *Id*. Petitioner, still protesting the BOP's calculation of his full term expiration date, refused to sign the documents outlining the terms of his mandatory release. *Id*. Despite his refusal to sign the documents, Petitioner was released from federal custody to the custody of the State of Missouri pursuant to a detainer. Petitioner remained in the custody of that state until October 20, 2005. Response Exhibit 14 at 2.

When he was released by the State of Missouri, Petitioner was to report to a probation officer and remain under the Commission's supervision until the expiration of the full term of his sentence. Only then would Petitioner begin to serve the court-ordered three-year term of special parole.

---

[4]A prisoner's "mandatory release" date is calculated by deducting the number of days of good time credit from the prisoner's full term expiration date. *See* 28 C.F.R. § 2.35(a). Mandatory release is conditional and supervised, and in these respects it resembles parole.

[5]*See* 18 U.S.C. § 4164.

On January 26, 2006, however, David E. Dickerson, a United States Probation Officer, submitted a Violation Report to the Commission stating that Petitioner had violated the terms of his mandatory release and recommending that a warrant be issued. Response Exhibit 14. A warrant for Petitioner's arrest was issued on January 31, 2006, *see* Response Exhibit 17 at 2, and on February 24, 2006, Petitioner was returned to the custody of the BOP. Response Exhibit 18 at 1.

On March 23, 2006, the Commission determined that there was probable cause to believe that Petitioner had violated the conditions of his mandatory release by failing to report for supervision, failing to maintain regular employment, failing to submit to a drug test, violating a special condition (drug aftercare), and using dangerous and habit forming drugs. Response Exhibit 17.

The revocation hearing was held on June 28, 2006. Response Exhibit 18 at 1. The hearing officer stated in her Hearing Summary that Petitioner had refused to participate in the hearing based on his contention that he had completed his term of imprisonment and was no longer subject to the Commission's supervision. *Id*. at 1-2. Petitioner's assertion was based on his theory that previously-earned good time credits should have been applied to actually shorten his sentence. Under Petitioner's theory, which he repeats in this action, he had only 334 days remaining until his full term expiration date as of July 7, 2005, not the 644 days calculated by the BOP. *See* Amended Petition at 4. The hearing officer rejected Petitioner's theory and stated that the BOP had correctly calculated Petitioner's sentence. She recommended that the Commission revoke Petitioner's mandatory release but that his

sentence be credited with the time he had spent on mandatory release.[6] Response Exhibit 18 at 3. The Commission accepted the hearing officer's recommendation and revoked Petitioner's mandatory release on July 17, 2006. Response Exhibit 19. Petitioner did not appeal the Commission's decision to revoke his mandatory release.

After the revocation of Petitioner's mandatory release, the BOP erroneously calculated Petitioner's new mandatory release date as July 29, 2006. A BOP official completed a Late Release Notice for United States Probation Service, and Petitioner was released on August 9, 2006. Response Exhibit 20. A case analyst for the Commission discovered the error on August 16, 2006, *see* Response Exhibit 21, and the BOP recalculated Petitioner's mandatory release date which, with the application of good time credits and the statutory 180 days, was November 27, 2006. Response Exhibit 22, Exhibit 24 at 2. Petitioner was returned to federal custody on August 23, 2006, to serve the remainder of his sentence. Response Exhibit 23.

## II. <u>Petitioner's Claims</u>

Petitioner first contends that as of July 7, 2005, when he was mandatorily released from federal custody, the BOP miscalculated the number of days remaining until the full term expiration date of his sentence. He contends that the BOP failed to subtract statutory good time credits and that his Mandatory Release Certificate should have reflected a remaining 334 days rather than 644 days as calculated by the BOP. Amended Petition at 4.

---

[6]Petitioner also received credit for the time he had been incarcerated while awaiting his parole revocation hearing.

Petitioner's second ground for relief is closely related to the first. Petitioner contends that his full term expiration date should have been reduced by 310 days of statutory good time credits, making his full term expiration date December 9, 2005, instead of October 14, 2006.[7] Amended Petition at 5.

In his third ground for relief, Petitioner asserts that the Commission should have applied statutory good time credits toward the expiration of his sentence in October of 2003, when the Commission rescinded its order granting Petitioner parole. He further states that the Commission violated his due process rights by "demanding an arrest warrant without having adequate and reliable information to support their decision to revoke a parole term that was exhausted as of December 9, 2005." Amended Petition at 7.[8]

[7]Petitioner does not specify the time period during which he allegedly accrued the 310 good time credits. It is apparent, however, that Petitioner believes he accrued these credits sometime before he was offered parole in December of 2003, when he waived parole by refusing to sign the documents related to his parole. His refusal to sign the documents was based on his assertion that the Commission had failed to apply good time credits to shorten his remaining sentence. At that point, Petitioner had been released on parole five times, and each time his parole had been revoked. Therefore, the 310 credits would have to have accrued during a period or periods of imprisonment preceding one or more of his previous five stints on parole, all of which ended with revocation by the Commission.

[8]The Notice of Action dated July 17, 2006, informed Petitioner that the Commission was revoking his mandatory release. *See* Response Exhibit 19. The Notice of Action specifically stated that "THE ABOVE DECISION IS APPEALABLE," (emphasis in original) and informed Petitioner that he could "obtain appeal forms from [his] caseworker or supervising officer" and that the appeal "must be filed with the Commission within thirty days of the date [the Notice of Action] was sent." *Id.* at 2. Petitioner did not appeal the Commission's revocation of his July 17, 2006, mandatory release, and he is, therefore, procedurally barred from challenging the revocation in this action. *See Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981) (holding that a state prisoner is procedurally barred from challenging parole decisions unless he has exhausted state court remedies); *Merki v. Sullivan*, 853 F.2d 599, 600-601 (8th Cir. 1988) (federal inmate was procedurally barred from challenging decision of the Commission where inmate had received notice of opportunity for further

(continued...)

## III. Analysis

Petitioner's grounds for relief are rooted in his belief that the BOP has miscalculated the full term expiration date of his sentence, and his arguments reflect his misunderstanding of the nature and use of statutory good time credits.

Good time credits do not shorten the sentence imposed by a sentencing court; rather, good time credits are applied only to shorten the time during which a federal inmate must serve his sentence incarcerated in a penal institution. When an inmate is released on parole or mandatory release, he is still serving the full term of his sentence; he is simply serving his sentence outside the confines of a federal prison, but still under the supervision of the Commission. *See Patterson v. Knowles*, 162 F.3d 574, 575 (10th Cir. 1998). Upon a federal inmate's release from confinement in prison, the good time credits earned prior to release expire, and such credits can have no effect on a subsequent parole violator term. *Id*.

Federal statutory law governs the application of good time credits:

> A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days.

*See* 18 U.S.C. § 4164.

The Commission's regulations correspond to the statute:

---

[8](...continued)
administrative review to bring the error to the Commission's attention but did not pursue administrative review). The merits of Petitioner's third ground for relief, therefore, need not be addressed.

> A prisoner shall be mandatorily released by operation of law at the end of the sentence imposed by the court less such good time deductions as he may have earned through his behavior and efforts at the institution of confinement. If released pursuant to 18 U.S.C. § 4164, such prisoner shall be released as if on parole, under supervision until the expiration of the maximum term or terms for which he was sentenced less 180 days.

28 C.F.R. § 2.35(a). The regulations spell out the Commission's interpretation of the limited use of good time credits:

> It is the Commission's interpretation of the statutory scheme for parole and good time that the only function of good time credits is to determine the point in a prisoner's sentence when, in the absence of parole, the prisoner is to be conditionally released on supervision, as described in subsection (a). *Once an offender is conditionally released from imprisonment, either by parole or mandatory release, the good time earned during that period of imprisonment is of no further effect either to shorten the period of supervision or to shorten the period of imprisonment which the offender may be required to serve for violation of parole or mandatory release.*

28 C.F.R. § 2.35(b) (emphasis added). The Tenth Circuit Court of Appeals has determined that the Commission's interpretation of 18 U.S.C. § 4164 is a permissible construction of the good time statutes. *See Patterson* at 575-576 (citing cases). Therefore, contrary to Petitioner's apparent theory, Petitioner's good time credits did not survive his release and could not be credited toward any subsequent period of imprisonment which he was required to serve for violations of his parole or mandatory release. Petitioner's request for habeas relief is therefore without merit and should be denied.

## RECOMMENDATION

It is recommended that the Amended Petition [Doc. #9] be denied.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by February 20th, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this case.

ENTERED this 30th day of January, 2007.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE